## STATE OF CONNECTICUT *v.* LENNARD J. TOCCALINE
## (SC 16298)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

---

Argued September 10—officially released November 13, 2001

*Richard S. Cramer*, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, was *Debra Collins*, assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The sole issue in this appeal is whether under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or the plain error doctrine, the defendant may prevail on an unpreserved claim regarding the admission of certain expert testimony. More specifically, the defendant claims that the trial court improperly permitted an expert witness to offer his opinion as to the credibility of the victim's claims of sexual assault by

the defendant and further, to testify regarding the guilt of the defendant. We disagree with the defendant and affirm the judgment of the trial court.

The defendant, Lennard J. Toccaline, appeals from the judgment of conviction, after a jury trial, of sexual assault in the first degree in violation of General Statutes (Rev. to 1995) § 53a-70 (a) (2),[1] sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A),[2] three counts of risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21 (2), as amended by No. 95-142, § 1, of the 1995 Public Acts,[3] and, following a court trial, of being a persistent felony offender in violation of General Statutes (Rev. to 1995) § 53-40 (a).[4]

---

[1] General Statutes (Rev. to 1995) § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

[3] General Statutes (Rev. to 1995) § 53-21, as amended by No. 95-142, § 1, of the 1995 Public Acts, provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, shall be guilty of a class C felony." Public Act 95-142 became effective on October 1, 1995. See General Statutes § 2-32. Since the defendant committed the crimes during the period from June, 1996 through September, 1996, the proper text of § 53-21 is that as amended by Public Act 95-142.

[4] General Statutes (Rev. to 1995) § 53a-40 (a) provides in relevant part: "A persistent dangerous felony offender is a person who (1) stands convicted of . . . sexual assault in the first or third degree . . . and (2) has been, prior to the commission of the present crime, convicted of and imprisoned under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution, for any of the following crimes: (A) The crimes enumerated in subdivision (1) of this subsection . . . ." We note that No. 99-2, § 40, of the 1999 Public Acts amended § 53a-40. Public Act 99-2, § 40, became effective on October 1, 1999. Since the defendant's crimes occurred in 1996, the 1995 revision of

The defendant had been charged in the first part of a two part information with one count of sexual assault in the first degree, two counts of sexual assault in the fourth degree, and three counts of risk of injury to a child. Because the defendant previously had been convicted of sexual assault in the first degree, he also was charged in the second part with being a persistent dangerous felony offender. The jury returned a verdict of guilty on the charges of sexual assault in the first degree, one count of sexual assault in the fourth degree, and three counts of risk of injury to a child. The defendant elected to be tried by the court on the persistent dangerous felony offender charge. Following his conviction on that count, the defendant was sentenced to a total effective term of forty years imprisonment, execution suspended after twenty-five years, and ten years probation. This appeal followed.[5]

On the basis of the evidence presented, the jury reasonably could have found the following facts. The victim, MC, was born on May 7, 1984. In 1996, the defendant, who was thirty-five years old, was the boyfriend of the victim's aunt. The defendant and the victim's aunt lived together in a house near a lake, where MC sometimes visited. Usually, the defendant went to MC's house to pick her up and bring her to her aunt's house. During the visits, MC and the defendant often played video games or went fishing together.

Three acts of sexual contact by the defendant occurred during the period from June, 1996, through

§ 53a-40 (a) is applicable.

The defendant was subject to § 53a-40 (a) based on a 1982 conviction for first degree sexual assault. He was sentenced to a term of twelve years imprisonment, execution suspended after five years.

[5] We note that the defendant originally appealed to the Appellate Court. Pursuant to General Statutes § 51-199 (b) (3), however, this appeal should have been filed in the Supreme Court. We therefore transferred the appeal to this court pursuant to Practice Book § 65-4.

September, 1996, when MC was twelve years old. In the first incident, the defendant kissed MC's breasts and vaginal area. In the second incident, which occurred in August, 1996, when the defendant and MC were fishing from a boat on the lake, the defendant placed MC's hand on his penis. He then put his hand over hers and manually stimulated himself until he ejaculated. During the third incident, which occurred in September, 1996, the defendant invited MC to come to his bed. He then got on top of her, pinned her hands above her head, and penetrated her vagina with his penis. MC did not tell her mother or aunt about the events with the defendant because she was afraid of the defendant. In October, 1996, MC and her family moved to another state.

In February, 1998, while cleaning MC's bedroom, her mother found a letter written to MC from a man named W, who was a friend of MC's family. W had begun to baby-sit for MC and her siblings in the summer of 1997.[6] At that time, W was thirty-two years old and MC was thirteen. In the letter, W told MC that he wanted to hold her and take her pain away.

MC's mother was concerned about the contents of the letter and confronted W about his relationship with MC. Her mother also confronted MC about her relationship with W. Although she denied any sexual contact with W, MC told her mother about the incidents that had occurred with the defendant during the summer of 1996. MC also had told W about the defendant's conduct prior to disclosing this information to her mother.

The defendant gave a statement to the police in which he responded to MC's allegations of sexual abuse. In the statement, the defendant claimed that he and MC

---

[6] At the trial, W admitted that he and MC had kissed on one occasion, although both denied that they had engaged in any sexual relations. W was investigated by the local police and family services unit, but no charges were brought against him.

often "horse played" together. The defendant admitted that he may have had sexual contact with MC during this horseplay, although, he claimed, MC never objected to such contact and that the contact did not constitute intercourse.[7] The statement was entered into evidence and read aloud to the jury.

On appeal, the sole issue is whether, under *Golding* or the plain error doctrine, the defendant may prevail on his unpreserved claim regarding the admission of certain expert testimony. Because we do not consider the defendant's claim to be either constitutional in nature or to constitute plain error, we affirm the judgment of conviction.

Elton Grunden, a licensed clinical social worker at a counseling and mental health center in the state to

[7] The defendant's statement provided in relevant part: "On one occasion when [MC] was over she and I had been horsing around. . . . I recall that MC usually had worn either a halter top and shorts, a bathing suit or usually some other summer attire. During our 'horsing around' I recall that I moved her T-shirt up exposing her mid section, put my mouth on her skin and blew onto her skin causing a fart like noise. . . . I may have put my mouth on her in the area of her breasts and if I hit any part of her breast it was by accident. [MC] had just begun to develop her breast[s] and my mouth never touched her nipples. . . . During the time when [MC] and I were horsing around [on the boat] I may have had an erection and [MC] may have grabbed my erection by accident. When she may have grabbed my erection she didn't make a big deal about it. I never asked [MC] to grab my erection. After [MC] grabbed my erection, she didn't make a big deal about it and I never mentioned this incident to anyone. . . . On one occasion, I recall being on my bed in the bedroom. . . . During our 'horsing around' I ended up on top of her on the bed. Sometime during our horsing around she would sometime[s] get the advantage and end up on top of me. When I ended up on top of her I recall having her arms pinned up above her head holding her down. I was on top of her for just a couple of minutes and as I was on top of her she was moving around trying to get away. . . . While she was trying to get away her clothes were moving around. During the time I was on top of her when we were horsing around, it's possible that I became excited and got an erection. Being in the position that I was in on top of her she would have felt my erection in the area of her vagina. Due to the fact that we were both moving around she may have misunderstood that for sexual contact."

which MC's family had moved, testified on direct examination for the state. He had met with MC in February, 1998, to discuss her allegations of sexual abuse by the defendant. Grunden testified that in that meeting, MC had described instances of sexual contact with the defendant. He also stated his opinion that the victim had suffered sexual abuse perpetrated by the defendant. Finally, Grunden testified that it was his opinion that MC's testimony was truthful, based, in part, on the consistency of her accusations.[8] The defendant did not

---

[8] The following is the relevant portion of the colloquy between the assistant state's attorney and Grunden:

"Q. Now, how do you know the victim?

"A. I met the victim on 2/18/98, when she and her mother arrived at my office as clients.

"Q. Okay. And you—could you please describe her condition at that time?

"A. I found the victim to be as she appeared to be today. Somewhat reluctant and shy and quiet, unwilling to talk unless prompted at times.

"Q. Okay. And what, if anything, did you do on that occasion?

"A. She and her mother and I in my office conducted what we call an intake or a screening interview to make a primary assessment of what was the issue so that we could get information and refer to another therapist with a specialty that might help that.

"Q. Okay. And did you take a history of the victim at that time?

"A. Yes. I got a history of the presenting problem and from the victim and her mother at that time.

"Q. And did the victim describe to you sexual abuse she endured by the defendant in this matter in that history?

"A. Yes, she did.

"Q. Okay. And from your interview of the victim, and based on your professional experience, have you an opinion as to whether or not the victim was a victim of sexual abuse by the defendant in this matter?

"A. Of that, I don't have much doubt. Yes, I do believe that.

"Q. I'm sorry, your opinion is?

"A. I don't have much doubt that what the victim said is true."

Later, the following exchange between the assistant state's attorney and Grunden occurred:

"Q. Now, however, in your report you do state that the victim confirms several incidents of molestation with the defendant . . . .

"A. Yes. And that's the basis of my opinion that I stated for you earlier. That, again, she was very explicit, very direct, very consistent in her report of those issues, and it was all very similar to what evidence she gave in her testimony this morning.

"Q. So you were here present while she testified today?

object to any of Grunden's testimony. Nevertheless, the trial court did issue a constancy of accusation instruction to the jury regarding Grunden's testimony on direct examination.[9]

Because, as noted previously, the defendant did not object to Grunden's testimony at the trial court, to prevail on his claim before this court he must, as he admits, do so under either *State* v. *Golding*, supra, 213 Conn. 233, or the plain error doctrine. The state concedes that Grunden's testimony was improper, but argues that the defendant's unpreserved claims cannot succeed under either *Golding* or the plain error doctrine. We agree with the state.

"A. Yes.

"Q. And you're stating that her testimony today was what in relation to what she said about [the defendant] to you back in February of '98?

"A. It was so consistent to be extremely similar in both her presentation and in the facts she presented.

"Q. And that is the reason you based your opinion that it, in fact, had occurred?

"A. Yes."

Later, the following exchange between the assistant state's attorney and Grunden occurred:

"Q. Now, the incidents that occurred between the defendant and the victim in this matter, in your professional opinion, did each of those incidents include some type of what would be qualified as sexual activity?

"A. Yes, she was very clear, as she was today, about many of the details that she reported this morning."

[9] The trial court stated: "Let me take this opportunity to caution the jury. We've had testimony from [Grunden] and also the alleged victim's mother indicating that the victim related to those parties the allegations that she also made against the defendant. That is not direct evidence that the defendant engaged in the activity, but it is introduced to corroborate the victim's testimony. It goes to her credibility, and it's used for that limited purpose only. Normally . . . out-of-court statements are not admissible in court, but there is this exception in sexual assault cases to allow testimony concerning what the victim said for purposes of corroboration of the victim's credibility only and not as direct proof that those activities occurred. Obviously, the two other witnesses weren't there and did not see anything of that nature."

The trial court, in its charge to the jury, also gave instructions regarding the role of experts generally and additional instructions regarding constancy of accusation testimony.

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id., 239–40.

The defendant is not entitled to prevail under *Golding* because his claim does not raise a constitutional issue. In essence, the defendant attempts to " 'put a constitutional tag on a nonconstitutional evidentiary ruling.' " *State* v. *Vilalastra*, 207 Conn. 35, 46, 540 A.2d 42 (1988). We previously have stated that "the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved." (Internal quotation marks omitted.) Id. "The trial court's exercise of discretion in admitting expert testimony is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." *State* v. *Smith*, 35 Conn. App. 51, 70, 644 A.2d 923 (1994). The errors claimed by the defendant in the present case are simply evidentiary in nature.[10] Although the trial court, upon proper objection

---

[10] We recognize that an expert witness may not testify regarding the credibility of a particular victim. See *State* v. *Grenier*, 257 Conn. 797, 806, 778 A.2d 159 (2001); *State* v. *Ali*, 233 Conn. 403, 432, 660 A.2d 337 (1995); *State* v. *Borrelli*, 227 Conn. 153, 173–74, 629 A.2d 1105 (1993). We also recognize that witness "[t]estimony is objectionable if it embraces an opinion on the ultimate issue to be decided by the trier of fact. *Kowalewski* v. *Mutual Loan Co.*, 159 Conn. 76, 80, 266 A.2d 379 (1970); *State* v. *Donahue*, 141 Conn. 656, 667, 109 A.2d 364 (1954) [appeal dismissed and cert. denied, 349 U.S. 926, 75 S. Ct. 775, 99 L. Ed. 1257 (1955)]; *LaFrance* v. *LaFrance*, 127 Conn. 149,

by the defendant, would have been required to exclude this testimony, the presentation of Grunden's statements to the jury in the absence of such an objection did not implicate a constitutional right or result in a fundamentally unfair trial.[11]

The case presented is thus distinguishable from this court's recent decision in *State* v. *Grenier*, 257 Conn.

155, 14 A.2d 739 (1940)." C. Tait, Connecticut Evidence (3d Ed. 2001) § 7.17.2. Thus, the trial court, upon objection by the defendant, would have been obligated to exclude Grunden's testimony relating to MC's credibility and the guilt of the defendant. For the reasons stated in this opinion, however, the defendant's claim does not raise a constitutional issue or amount to plain error.

[11] The defendant also argues on appeal that the assistant state's attorney "exploit[ed]" Grunden's testimony when she referred to it in her closing argument. The assistant state's attorney stated in her closing argument: "And don't forget that MC has been very consistent as to who did this to her. That's corroborated by others' testimony that she only said it was [the defendant]. Counselor Grunden also said that he felt that there was definitely something [that] had happened with [the defendant] and did not feel that something had happened, other than kissing, with [W]."

On rebuttal argument, the assistant state's attorney also stated: "Mr. Grunden said there was no doubt it occurred. [The defendant's attorney] felt that that—because of a one hour visit—was malpractice. Well, that's why I went into Mr. Grunden's professional experience. I remember he'd been doing that job. He has the background to make opinions like that. And again, it's his qualifications that has him be able to take the stand and say something like that. Remember, he knew he was under oath. And he said in his opinion it had occurred between MC and [the defendant]."

If the defendant is alleging a form of prosecutorial misconduct resulting in the deprivation of his constitutional right to a fair trial, we first note that the defendant never objected to these remarks in the state's closing argument. In addition, to the extent that we regard the defendant's argument as a claim of prosecutorial misconduct, the defendant may not prevail under either *Golding* or the plain error doctrine, because these brief and isolated comments do not implicate the defendant's constitutional right to a fair trial. *State* v. *Atkinson*, 235 Conn. 748, 769, 670 A.2d 276 (1996) (" '[*Golding*] review of [a claim of misconduct by the prosecutor in closing argument] is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial' "). "Furthermore, in order to warrant review under the plain error doctrine, the allegedly improper conduct must so pervade the defendant's trial as to have impaired the effectiveness or integrity of the judicial process." Id.

797, 778 A.2d 159 (2001).[12] In *Grenier*, we determined that the defendant was entitled to a new trial because expert opinion testimony had been improperly admitted concerning the victim's credibility. Id., 801. In *Grenier*, unlike the present case, the defendant had objected to the improper testimony by the expert, thus preserving the issue for appeal, and our review was not limited to *Golding* or the plain error doctrine. Id., 802–804. Instead, our focus was on whether the improperly admitted testimony was harmful. Id., 806. We concluded that the error was not harmless, in part, because the state's case rested entirely on the credibility of the victim. Id., 807.[13]

Finally, the defendant urges this court, pursuant to Practice Book § 60-5, to conclude that the admission of Grunden's testimony constituted plain error.[14] We disagree with the defendant. "Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 25, 664 A.2d 719 (1995). Plain

---

[12] We note that *Grenier* was released after the filing of briefs in the present case, but prior to oral argument before this court.

[13] We also recognize that in the present case, unlike *Grenier*, the jury was presented with significant evidence, aside from the victim's testimony, that the sexual abuse had in fact occurred. For example, MC's physician testified that a physical examination revealed that MC had experienced vaginal penetration, which most likely was caused through sexual relations. There also was testimony concerning depression and a change in character MC experienced during and after the summer of 1996. More specifically, MC's aunt testified that after the incident on the boat, MC returned to the house and appeared withdrawn and quiet, which was out of character for MC. Most importantly, the defendant's own written statement corroborated much of what MC claimed to have occurred. See footnote 7 of this opinion.

[14] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

error is a doctrine that should be invoked sparingly. See *Berchtold* v. *Maggi*, 191 Conn. 266, 274, 464 A.2d 1 (1983). A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. See *State* v. *Schiappa*, 248 Conn. 132, 166, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999).

We conclude that the trial court's admission of Grunden's testimony was not plain error. We do not agree that the admission of Grunden's testimony undermined the fairness or integrity of the trial afforded to the defendant. Further, we see nothing in the record that leads us to conclude that the verdict constituted manifest injustice to the defendant or will lead to diminished confidence in our judicial system.

The judgment is affirmed.

In this opinion the other justices concurred.