**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John JOSEFIK and Charles Soteras,
Defendants-Appellants.**

**Nos. 83–2600, 83–2607.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1984.

Decided Jan. 22, 1985.

Maureen DeMaio, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Robert J. Weber, Chicago, Ill., for defendants-appellants.

Before CUDAHY and POSNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

POSNER, Circuit Judge.

Josefik and Soteras were convicted by a jury of conspiracy to possess, and possession of, more than 1,000 cases of Chivas Regal scotch stolen from an interstate shipment (18 U.S.C. §§ 371, 659), and each was sentenced to eight years in prison and fined $7,000. They appeal on several grounds, the first being that the judge violated Rule 24(c) of the Federal Rules of Criminal Procedure by recalling an alternate juror.

At the end of the trial, the remaining alternate was excused and the jury retired to deliberate. This was at 5:45 p.m. but the jury had dinner before its deliberations, which did not begin till 7:30. At 7:39 one of the jurors sent a note to the judge asking to be excused. The jury stopped deliberating when this happened. Upon receiving the note the judge telephoned the alternate and told her not to discuss the case with anyone and instructed the jury to come back into the courtroom. After questioning the juror who had asked to be excused and discovering that she had had trouble hearing during the trial, the judge excused her and sent the jury home with instructions to come back at 10:00 a.m. The next morning, in the presence of the defendants and their counsel, the judge questioned the recalled alternate, who said she had not discussed the case with anyone. Counsel for both defendants consented to have the alternate juror added to the jury—though we shall see that there is a shadow over Josefik's consent. The recalled alternate then rejoined the jury, which returned a verdict of guilty that afternoon.

■ Rule 24(c) provides that "alternate jurors in the order in which they are called shall replace jurors who, *prior to the time the jury retires to consider its verdict,* become or are found to be unable or disqualified to perform their duties" (emphasis added) and that "an alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict." There is no provision for recalling an alternate after he is discharged and we think policy as well as the

language we have quoted from the rule (especially the part we have italicized) forbid the practice. An alternate who joins the jury's deliberations after they have begun, even if he has not discussed the case with other people or forgotten the judge's (other) instructions in the interim, will be at a disadvantage in holding his own with the other jurors, and as a result the defendant may not really be getting the jury of 12 to which he is entitled. See Note of Advisory Comm. to 1983 Amendment to Fed.R. Crim.P. 23(b); 8A Moore's Federal Practice ¶ 23.04[3] (2d ed. 1984). But it is not always *reversible* error to recall an alternate who has been discharged. Suppose the alternate in this case had been recalled as she was leaving the courtroom 30 seconds after having been discharged. It would violate Rule 24(c) to put her back on the jury but there would be no prejudice to the defendants that would warrant reversal of their convictions; and only prejudicial violations of the rule are reversible errors. See, e.g., *United States v. Barker,* 735 F.2d 1280, 1282 (11th Cir.1984); *United States v. Foster,* 711 F.2d 871, 886 (9th Cir.1983); *United States v. Kaminski,* 692 F.2d 505, 518 (8th Cir.1982); *United States v. Kopituk,* 690 F.2d 1289, 1309 (11th Cir.1982).

■ There was no prejudice here even though the lapse of time between discharge and recall was much longer than in our hypothetical case. The alternate was called less than two hours after she had been discharged, and told not to discuss the case with anyone; and she testified the next morning that she had not discussed the case either before or after the call. As the jury when she rejoined it was only nine minutes into its deliberations (and started over, at the trial judge's direction, when she rejoined it), she didn't miss anything important and could deliberate on a par with the original jurors. The deliberations continued for several hours until the jury reached its verdict; it seems most unlikely that the nine-minute deliberation the evening before could have been critical to that verdict.

Even if Josefik and Soteras were prejudiced by the violation of Rule 24(c), they waived any challenge by consenting to the alternate's recall. Although *United States v. Lamb*, 529 F.2d 1153, 1156–57 (9th Cir.1975) (en banc), states in dictum that a violation of Rule 24(c) cannot be waived, we cannot understand why not. No other circuit has followed the dictum. See, e.g., *United States v. Barker, supra*, 735 F.2d at 1283; *United States v. Davis*, 608 F.2d 698, 699 (6th Cir.1979) (per curiam). Even panels of the Ninth Circuit have repeatedly rejected it. See *United States v. Lopez*, 581 F.2d 1338, 1342 (9th Cir.1978); *United States v. Foster, supra*, 711 F.2d at 886; *United States v. Crisco*, 725 F.2d 1228, 1233 (9th Cir.1984); *United States v. Rubio*, 727 F.2d 786, 799 n. 7 (9th Cir.1984) (per curiam). If the defendant would prefer to take his chances with the jury in its reconstituted form rather than undergo the expense and uncertainty of a new trial, why should he not be allowed to? Rule 23(b) allows the parties to stipulate to trial by a jury "of any number less than 12"; and of course the defendant can if he wants waive all right to a jury trial, see Rule 23(a). No doubt there are limits to waiver; if the parties stipulated to trial by 12 orangutans the defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept. But nothing in the procedure used in this case shocks our consciences.

Josefik complains that his right to effective assistance of counsel was denied both when his lawyer failed to object to the recall of the alternate and at the time of sentencing (and also when Josefik moved for, and was denied, bond pending appeal—but this issue is not before us, because Josefik has not asked us to review the district court's denial of bond pending appeal or to grant him such bond). The district judge made clear to the defendants and their lawyers that she would have declared a mistrial if the defendants, and perhaps if just one defendant, had asked her to do so in lieu of recalling the alternate; so we must consider whether the failure of Josefik's lawyer to make such a request was a'manifestation of ineffective assistance of counsel, entitling Josefik to a new trial.

Josefik had failed to pay any part of his lawyer's bill, and the lawyer had made demand (without success) on the promissory note that Josefik had given and had made clear to Josefik that if there was another trial Josefik would have to get another lawyer. Josefik argues that it was his failure to pay the lawyer that made the lawyer advise him to accept the recall of the alternate juror. But the lawyer's ability to collect his fee would be unaffected by whether Josefik won a new trial or submitted his fate to the reconstituted jury in this one, for the lawyer had no intention of throwing good money (or time) after bad by representing Josefik in any new trial, and thus had nothing to gain by counseling him one way or the other. But even if the lawyer had had a financial motivation to disserve his client (and realism requires recognition that a lawyer's financial incentives and his duty to his client sometimes conflict), it would not make everything he did ineffective assistance per se; ineffectiveness would still have to be shown. There is no evidence that the lawyer's advice to Josefik to accept the reconstituted juror was bad advice; the jury may have seemed (before it delivered its verdict) as friendly to the defense as the jury at a new trial could be expected to be, or even more friendly. We certainly have no basis for concluding that the lawyer's advice was so bad (viewed ex ante, of course, not ex post—as matters turned out Josefik could not have done worse by getting a new trial) as to fall below minimum professional standards and thus violate Josefik's rights.

Shortly before Josefik was to be sentenced, the government submitted a supplemental presentence report which contained allegations that Josefik was an extortionist. Josefik's lawyer asked that the government be directed to produce the

witness whose allegations these were and the court acceded to this request and held a hearing at which the witness was questioned by the government and cross-examined by Josefik's lawyer. Josefik's principal complaint about the lawyer's handling of this matter is that the lawyer failed to obtain certain documents that, Josefik says, would have refuted the witness's testimony about extortion. But we have examined the documents, and they actually corroborate that testimony. As it would therefore have done no good to present them at the hearing, the lawyer's failure to do so cannot have harmed Josefik; and prejudice is part of the constitutional standard for ineffective assistance of counsel, see *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 2067–69, 80 L.Ed.2d 674 (1984), with exceptions immaterial to this case.

Josefik (here joined by Soteras) next complains that the judge erred when, in explaining to the jury what "knowingly" meant (as in the possession of goods known to be stolen, one of the crimes punished by 18 U.S.C. § 659), she said: "No person can intentionally avoid knowledge by closing his eyes to facts which should prompt him to investigate." The defendants complain that this injects a negligence standard into the consideration of a crime requiring proof of intent, by allowing the jury to conclude that a failure to investigate suspicious facts signifies knowing misconduct. But to "intentionally" avoid knowledge implies more than carelessness; it implies something verging on knowledge, combined with a desire to escape the consequences of knowledge. Cf. Elster, Ulysses and the Sirens: Studies in Rationality and Irrationality 178–79 (1979). It is enough for guilt of knowing possession of stolen property. See Perkins & Boyce, Criminal Law 401 (3d ed. 1984). We therefore have upheld in other cases the identical instruction that the defendants in this one challenge, see, e.g., *United States v. Petullo*, 709 F.2d 1178, 1181 (7th Cir.1983); *United States v. Burns*, 683 F.2d 1056, 1059–61 (7th Cir. 1982) (per curiam), while remarking that it is "somewhat opaque," *id.* at 1061. A

clearer instruction would be, "with a conscious purpose to avoid learning the truth," see *United States v. Natelli*, 527 F.2d 311, 323 (2d Cir.1975); cf. 1 Devitt & Blackmar, Federal Jury Practice and Instructions § 14.09 (3d ed. 1977), and maybe "conscious" is redundant, and "purpose to avoid learning the truth" would be better. Or maybe the jury should be asked whether the defendant "willfully shut his eyes for fear of what he would learn." See Perkins & Boyce, *supra*, at 401.

But small differences in the wording of instructions will rarely have such impact on the jury as to warrant reversal; and the substance of the instruction was certainly material to the issues in this case. Soteras had offered someone Chivas Regal that was "not too hot" (i.e., that had been stolen, but was not yet being sought by the police) at little more than half its wholesale price. The FBI got wind of the transaction and sent an undercover agent, posing as a buyer, to deal with Soteras and his associates, who included Josefik. Josefik helped in arranging the deal and transferring the scotch (which was stored in a warehouse that Josefik rented space in) to the FBI agent. It is inconceivable that Josefik did not believe that the scotch was stolen, and in context all the challenged instruction meant is that he could not get off the hook simply by resolutely refusing to find out for sure whether it was stolen. Incidentally, the instruction was completely harmless as to Soteras, for there was direct evidence that he himself described the scotch as stolen.

From what we have said it should be clear that we reject Josefik's last ground of appeal as well: that a reasonable jury could not have found him guilty beyond a reasonable doubt of possession and conspiracy to possess scotch whiskey which all agree had been stolen from an interstate shipment.

The judgments of conviction are

AFFIRMED.