

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-8-1995

# Claudio v Snyder

Precedential or Non-Precedential:

Docket 94-7591

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Claudio v Snyder" (1995). *1995 Decisions.* Paper 287.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/287

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 94-7591


CARMELO CLAUDIO;
ENRIQUE MAYMI,
                    Appellants

v.

*ROBERT SNYDER, Warden,
Delaware Correctional Center;
*M. JANE BRADY, Attorney
General of the State of Delaware

*(Amended as per the Clerk's 4/17/95 Order)




On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 91-cv--00203)




Argued October 16, 1995

Before: BECKER, ROTH, Circuit Judges
          and SHADUR', District Judge

(Opinion Filed November 8, 1995)



Stephen M. Latimer, Esq. (Argued)
Loughlin & Latimer
58-60 Main Street
Hackensack, NJ 07602

---

'Milton I. Shadur, United States District Court Judge for the
    Northern District of Illinois, sitting by designation.

                    Attorney for Appellants

Loren C. Meyers (Argued)
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801

                    Attorney for Appellees


                    OPINION OF THE COURT



ROTH, Circuit Judge

        Carmelo Claudio and Enrique Maymi appeal the district
court's denial of their consolidated petition for habeas corpus
relief.  Appellants were convicted in Delaware Superior Court of
first degree robbery, four counts of possession of a deadly
weapon during the commission of a felony, two counts of first
degree conspiracy, and one count each of first degree murder and
first degree attempted murder.  Claudio v. State, 585 A.2d 1278,
1279 (Del. Supr. 1991).  Appellants claim that the state trial
court erred by:  (1) substituting an alternate juror for an ill
juror without instructing the jury to discard previous
deliberations and begin anew, (2) failing to issue a curative
instruction despite allegedly inflammatory remarks by the
prosecutor after physical evidence was excluded, and (3)
instructing the jury on accomplice liability in a manner that

3

could lead a reasonable juror to believe that petitioners bore the burden of proof on that issue.

Jurisdiction in the district court was invoked pursuant to 28 U.S.C. § 2254(a) after appellants exhausted their state court remedies. Claudio v. Redman, Nos. 91–203–LON, 91–209–LON, slip op. at 2 (D. Del. Aug. 23, 1994) (consolidated petitions of Claudio and Maymi). This appeal is properly before us on a certificate of probable cause issued pursuant to 28 U.S.C. §2253.

We will affirm the district court's denial of habeas corpus relief on all three grounds, the second and third requiring no further discussion. Because the Delaware trial court's substitution of an alternate juror after jury deliberations had already begun presents a question of first impression in this circuit, we further elaborate our holding on this issue.

I

At the conclusion of appellants' state trial, the trial judge read his instructions to the jury and three alternate jurors. Claudio v. State, 585 A.2d at 1283. The jury began its deliberations on December 1, 1987, at approximately 10:30 a.m. and deliberated until approximately 5:00 p.m. During this first day of deliberations, the jury requested to view the defendant, Claudio. The trial judge agreed, and the twelve jurors and three alternates were brought back into the courtroom to view Claudio. The jury failed to reach a verdict during the first day of

deliberation and was sequestered for the night. The alternate jurors were separately sequestered.[2] Id.

During the night, one of the regular jurors became ill. The next morning, the trial judge excused the ill juror and replaced that juror with one of the alternates. The judge asked the three alternates if they had discussed the case amongst themselves during their sequestration and inquired whether they had read anything about the case. Id. at 1283 n.8. All three jurors responded in the negative. The trial judge then impaneled the first alternate. Defense counsel moved for a mistrial, but that motion was denied. Id. at 1283.

After impaneling the new juror, the trial judge gave special instructions to the reconstituted jury and to the alternate juror. The court instructed the original eleven jurors to "take whatever time is necessary, even though it may be repetitious and time consuming, to completely update [the alternate juror] as to the stage of deliberations you as a group have reached." Id. at 1284 n.9. The court then specifically directed the alternate juror to take as much time as necessary to familiarize herself with the evidence and with the thinking of the other jurors and to move forward only when she felt that she

_____

[2] The alternate jurors were not released at the conclusion of trial because, in the event that the jury returned a guilty verdict, the defendants were subject to a post-verdict hearing to determine the issue of capital punishment. Claudio v. State, 585 A.2d at 1283 n.7 (citing Del.C. § 4209(b)).

4

was at no relative disadvantage with regard to her understanding of the case.[3]

The reconstituted jury deliberated from approximately 10:01 a.m. to 5:00 p.m. on December 2. At 11:17 a.m. the jurors sent out a note asking if the surviving victim had been visited in the hospital by a Mrs. Guzman. The note was answered an hour later. On December 3 the jury reconvened at approximately 10:00 a.m. After a break for lunch at noon, the jury reached a verdict on all charges at approximately 2:00 p.m. on December 3. Thus the original jury deliberated for about six and one-half hours, and the reconstituted jury deliberated for approximately nine and

---

[3] The Delaware Supreme court quoted the trial judge's instructions to the replacement juror in part as follows:

> You find yourself [sic] somewhat of a disadvantage. Fortunately, however, with your diligence and the cooperation of your fellow jurors, you will be able to familiarize yourself with the deliberations concluded thus far, so that you are not at any disadvantage with regard to understanding all of the evidence and the views of your fellow jurors. It is essential and critical that you take whatever time is necessary to familiarize yourself with the evidence and the thinking and views of the jurors.
>    You must guard against the natural feelings to rush or hasten in order to keep up with the majority or the other 11. I instruct you to be conscious, and forthright in telling the others if you feel any disadvantage with regard to the level of your understanding.
>    When and only when you feel yourself adequately and reasonably equipped to understand what has transpired thus far in the deliberations, should you signal to your fellow jurors your desire to move forward.

Claudio v. State, 585 A.2d at 1284 n.9.

one-half hours.  Id. at 1284.  The jury returned the guilty verdicts noted above.  Appellants were sentenced to life imprisonment without possibility of parole for first degree murder, life imprisonment with possibility of parole for attempted murder, and an additional forty-five years for other offenses.

On direct appeal, the Supreme Court of Delaware ruled that the trial court violated Delaware Superior Court Criminal Rule 24(c), which permits the replacement of regular jurors by alternates prior to deliberation only.[4]  Id. at 1284-85.  It also concluded that the substitution of the alternate juror violated the United States and Delaware constitutions.  Id. at 1289, 1301. The court held, however, that these were harmless errors.  Id. at 1289, 1304.  The district court properly declined to review the state law issues involving Rule 24(c) and the Delaware Constitution, Claudio v. Redman, slip op. at 9 (citing Helton v. Fauver, 930 F.2d 1040, 1044 (3rd Cir. 1991)), and our review is confined to the federal constitutional challenge.

II

Appellants claim that the trial court's decision to substitute an alternate juror after jury deliberations had already begun violated their right to a trial by jury under the Sixth and Fourteenth Amendments to the United States

---

[4] A stipulation by the parties that they would accept the unanimous verdict of eleven jurors pursuant to Delaware Superior Court Rule 23(b) would have resolved the situation.  The Delaware Supreme Court noted that the trial court never put this question to the parties, Claudio v. State, 585 A.2d at 1305 n.73, and the record indicates that this option was not considered at the time.

6

Constitution.  The Supreme Court has summarized the essential

feature of a jury trial:

> "Providing an accused with the right to be
> tried by a jury of his peers gave him an
> inestimable safeguard against the corrupt or
> overzealous prosecutor and against the
> compliant, biased, or eccentric judge." Given
> this purpose, the essential feature of a jury
> obviously lies in the interposition between
> the accused and his accuser of the
> commonsense judgment of a group of laymen,
> and in the community participation and shared
> responsibility that results from that group's
> determination of guilt or innocence.

Williams v. Florida, 399 U.S. 78, 100 (1970) (citing Duncan v.

Louisiana, 399 U.S. 145, 156 (1968)).  Appellants contend that

the introduction of an alternate juror after deliberations had

begun vitiated the essential purpose of the jury by disrupting

the community participation and shared responsibility that the

Supreme Court deemed essential.  Appellants' Brief at 15 (quoting

Williams, 399 U.S. at 100).  The introduction of an alternate

juror after the commencement of deliberations violates the

"sanctity of the deliberative process" in a manner that renders

the trial fundamentally unfair, according to appellants.  Id. at

15, 16 (citing Williams, 399 U.S. at 100); Appellants' Reply

Brief at 5.

The Supreme Court has not specifically ruled on the

constitutionality of substituting an alternate juror after jury

deliberations have begun.  Most of the federal courts that have

addressed the issue, however, have held that when circumstances

require, substitution of an alternate juror in place of a regular

juror after deliberations have begun does not violate the

7

Constitution, so long as the judge instructs the reconstituted jury to begin its deliberations anew and the defendant is not prejudiced by the substitution. See, e.g., United States v. Guevara, 823 F.2d 446, 448 (11th Cir. 1987); Peek v. Kemp, 784 F.2d 1479, 1484-85 (11th Cir. 1986) (en banc), cert. denied, 479 U.S. 939 (1986); Miller v. Stagner, 757 F.2d 988, 995 (9th Cir. 1985), cert. denied, 475 U.S. 1048 (1986), and cert. denied sub nom., Freeman v. Stagner, 475 U.S. 1049 (1986); United States v. Josefik, 753 F.2d 585, 587 (7th Cir. 1985), cert. denied sub nom., Soteras v. U.S., 471 U.S. 1055 (1985); United States v. Hillard, 701 F.2d 1052, 1056-57 (2nd Cir. 1983); United States v. Evans, 635 F.2d 1124, 1128 (4th Cir. 1980). But see United States v. Lamb, 529 F.2d 1153, 1156-57 (9th Cir. 1975) (en banc) (finding impermissible coercion of juror when original jury required four hours to render verdict but reconstituted jury required only twenty-nine minutes).

In both Peek v. Kemp, 784 F.2d at 1484-85, and Miller v. Stagner, 757 F.2d at 995, federal courts declined to grant habeas corpus relief to petitioners convicted in state proceedings by juries including one or more alternates substituted after jury deliberations had begun. In Miller, two jurors were dismissed on the fifth day of jury deliberations and replaced with alternates over the objections of defense counsel. Miller, 757 F.2d at 995. The Ninth Circuit held that the substitution of the alternate jurors did not violate appellants' federal constitutional rights because the procedure followed by the trial court "preserved the 'essential feature' of the jury

8

required by the Sixth and Fourteenth Amendments." Id. (citing Williams, 399 U.S. at 100).

Unlike the California penal code at issue in Miller, however, Delaware's Superior Court Criminal Code permits replacement of regular jurors by alternate jurors only prior to deliberations. Compare Miller, 757 F.2d at 995 n.3 with Claudio v. State, 585 A.2d at 1284 n.11, 1285. By substituting an alternate juror after deliberations had begun, the Delaware trial court violated Rule 24(c) of the Delaware Criminal Code. The relevant question for us, though, is whether the state court violated the Sixth and Fourteenth Amendments to the federal constitution, not whether it violated a state rule of criminal procedure.

Analogous federal cases make clear that a violation of the established criminal procedure is not sufficient in itself to create a constitutional violation. Several courts have held that the substitution of an alternate juror after deliberations have begun in a federal criminal trial violates Rule 24(c) of the Federal Rules of Criminal Procedure. But despite the characterization of Rule 24(c) as "a mandatory requirement that should be scrupulously followed," federal courts have generally ruled that the substitution of a juror after deliberations have begun does not violate the United States Constitution, provided that defendants suffered no prejudice as a result. United States v. Phillips, 664 F.2d 971, 994-95 (5th Cir. Unit B 1981), cert. denied, 457 U.S. 1136 (1982), and cert. denied, 459 U.S. 906 (1982) (citing cases); see also Guevara, 823 F.2d at 448;

<u>Josefik</u>, 753 F.2d at 587; <u>Hillard</u>, 701 F.2d at 1056-57.  In

<u>Hillard</u>, for example, a juror became ill after two and one-half

days of deliberations and a three-day holiday recess.  <u>Hillard</u>,

701 F.2d at 1055.  The district court excused the ill juror and

impaneled an alternate juror, and the jury returned several

verdicts over the following two days.  The Second Circuit upheld

these verdicts against a constitutional challenge despite the

violation of Rule 24(c) because the "essential feature" of the

jury was preserved:

> The alternates were chosen along with the
> regular jurors and by the same procedures.
> They heard all the evidence and the
> instructions on the law with the regular
> jurors.  Moreover, the alternate chosen to
> replace the ill juror reaffirmed his ability
> to consider the evidence and deliberate
> fairly and fully . . .. The trial judge
> instructed all the jurors to begin their
> deliberations anew . . ..

<u>Id.</u> at 1056-57.  Thus, even though the pertinent rule of criminal

procedure was violated, the court found no constitutional

violation absent evidence that the defendant suffered prejudice

as a result.

Like the petitioners in <u>Hillard</u>, appellants in this

case cite no prejudice that would elevate a violation of a rule

of criminal procedure to a violation of the United States

Constitution.  The alternates in this case were chosen along with

the regular jurors, and they heard all of the same evidence and

legal instructions simultaneously with the regular jurors.  The

replacement juror reaffirmed that she had not discussed the case

10

and that she had not been exposed to media reports. Whereas the reconstituted jury in Hillard deliberated for slightly less time than the original jury before rendering its verdict, the reconstituted jury in this case continued its deliberations for a slightly longer time than the originally impaneled jury.

The fact that the Delaware trial court did not specifically instruct the jury to begin its deliberations anew is not dispositive. The trial court instructed the original jurors to "take whatever time is necessary" to completely inform the replacement juror of all previous deliberations and of each juror's individual point of view. It also instructed the replacement juror to guard against the inclination to proceed before she was thoroughly familiar with the evidence and the views of the other jurors. See supra note 2. Although the trial judge never specifically directed the jury to "begin anew," we agree with the district court that the trial court's instructions were the functional equivalent of such an instruction. The instructions were designed to eliminate any disadvantage that the alternate juror may have felt as a result of her late introduction into the deliberations and to ensure her full, effective, and uncoerced participation in all aspects of the deliberations. The words "begin anew" carry no talismanic power, and we would exalt form over substance were we to ignore the salutary effect of the trial court's instructions in this case.

Because the trial court's instructions were the functional equivalent of an instruction to "begin anew," we find no evidence that the substitution of the alternate juror

compromised the "essential feature" of a trial by jury.  We will therefore affirm the district court's denial of appellants' request for habeas corpus relief.