**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0171n.06
Filed: March 28, 2008

**No. 06-1773**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MONYA TATE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| BARBARA BOCK, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Respondent-Appellee. | ) | |
| | ) | |

Before: SILER, CLAY, and COOK, Circuit Judges.

**SILER, Circuit Judge.** Petitioner Monya Tate appeals from the district court's denial of his petition for a writ of habeas corpus. In 1998, Tate was convicted in the Circuit Court of Wayne County, Michigan, on two counts of second degree murder and one count of possession of a firearm during the commission of a felony. After exhausting his appeals in Michigan state courts, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the district court. He argued, inter alia, that the trial court violated his Sixth Amendment jury trial rights and his Fourteenth Amendment due process rights when it (1) recalled an alternate juror who had been discharged and (2) failed to instruct the jury to begin deliberating anew. The district court granted a certificate of appealability on these claims. Because he has procedurally defaulted the first claim and the second claim fails on the merits, we affirm the denial of his petition for a writ of habeas corpus.

Case No. 06-1773
*Tate v. Bock*

**BACKGROUND**

Tate was tried for murdering Gregory Mercer and Willie Torrence. The trial court empaneled

a jury of 13. After closing arguments and jury instructions, it drew the name of a juror to be

designated as an alternate. The trial court then dismissed the alternate juror, but cautioned that she

might be called back if necessary. On the morning of the second full day of deliberations, a juror

asked the court to excuse her because she had developed a rash. She expressed concern that the rash

might be contagious and stated that she had an appointment with a doctor later that day. The trial

court excused her and recalled the alternate juror. Before the alternate juror arrived to join the full

jury, the trial court gave the following instruction to the remaining 11 members of the jury:

> Obviously, you may have to go back, and I'm not going to say go back to square one,
> but certainly you will have to share with the other juror how you have been
> deliberating, and that juror will then be part of the 12 who will decide the case.

When the alternate arrived, the trial court asked her "[C]an you think of any reason why you couldn't

fairly and reasonably deliberate on this case and be fair to both sides?" She responded, "No, I

cannot, your Honor." The reconstituted jury resumed deliberations with the alternate and reached

a guilty verdict.

Tate appealed to the Michigan Court of Appeals, which affirmed his conviction. *People v.*

*Tate*, 624 N.W.2d 524, 532 (Mich. Ct. App. 2001). The Michigan Supreme Court then denied leave

to appeal because it was not persuaded that the questions should be reviewed. *People v. Tate*, 638

N.W.2d 749 (Mich. 2001) (table). The district court denied Tate's petition for a writ of habeas

corpus.

**ANALYSIS**

Case No. 06-1773
*Tate v. Bock*

We review de novo the district court's denial of a petition for a writ of habeas corpus. *Cone v. Bell*, 492 F.3d 743, 750 (6th Cir. 2007). An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

### Recalling the Alternate Juror

Tate first argues that the trial court acted unreasonably and contrary to clearly established Federal law when it recalled the alternate juror who had been discharged at the time the jury began its deliberations. However, he procedurally defaulted this claim due to his waiver in the trial court.

A federal claimant's procedural default precludes habeas review if the last state court rendering a judgment in the case rests its judgment on the procedural default. *Harris v. Reed*, 489 U.S. 255, 262 (1989). To determine whether a claim has been procedurally defaulted, we apply the four-part test laid out in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

Case No. 06-1773
*Tate v. Bock*

*Girts v. Yanai*, 501 F.3d 743, 753 (6th Cir. 2007) (quoting *Maupin*, 785 F.2d at 138) (emphasis

omitted). The Michigan Court of Appeals held that Tate had waived any argument that the itching

juror was improperly removed or replaced. It stated:

> Defendant next argues that, even if the court had the discretion to remove the juror,
> the court was without authority to recall an alternate juror who had been discharged.
> We again disagree. Defense counsel's waiver of any error in the removal of the
> itching juror also operates as a waiver of any error in replacing that juror with an
> alternate who had been discharged and was recalled.

*Tate*, 624 N.W.2d at 529.

Tate's waiver in the trial court meets the *Maupin* test for procedural default. He failed to

comply with Michigan's contemporaneous-objection rule by failing to object to the recall of the

discharged alternate. The Michigan court enforced the procedural sanction for failure to object

contemporaneously because it held that he had waived the argument. While the Michigan Court of

Appeals discussed the issue of recalling the juror after concluding it had been waived, *id.* at 529-30,

this analysis "was simply a supplement to its holding that [he] had waived any objection." *Scott v.*

*Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000) (concluding that a state court's discussion of an

alternative ground did not undermine actual enforcement of the state procedural ground). Tate's

waiver in the trial court was an adequate and independent state ground, and he has not demonstrated

cause nor prejudice stemming from it.

### Failure to Instruct the Jury to Begin Deliberations Anew After the Alternate Joined the Jury

Tate claims that the trial court's failure to instruct the jury to begin deliberating anew after

the alternate was recalled and empaneled violates his constitutional rights. While we are satisfied

that he did not procedurally default this claim, his claim fails because the trial court's failure to

instruct was not contrary to clearly established Federal law under 28 U.S.C. § 2254(d). Tate argues that *Smith v. Phillips*, 455 U.S. 209 (1982), and *Williams v. Florida*, 399 U.S. 78 (1970), clearly establish Federal law that entitles him to relief. We find this argument unpersuasive.

In *Smith*, the Supreme Court held that "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." 455 U.S. at 217. The Court reversed the order granting habeas relief, finding no violation of the right to a fair trial under the Due Process Clause where the prosecutor knew of but failed to disclose the fact that a juror had applied for a job with a law enforcement agency. *Id*. at 221. In *Williams*, the Supreme Court held that a state may utilize a six-person jury consistent with the Sixth Amendment's guarantee of a trial by jury. 399 U.S. at 86. The Court affirmed the order denying habeas relief because the habeas petitioner was not constitutionally entitled to a twelve-person jury. *Id*. Neither authority clearly establishes a constitutional right to have the jury instructed to deliberate anew after an alternate is empaneled.

AFFIRMED.

Case No. 06-1773
*Tate v. Bock*

**CLAY, Circuit Judge, concurring in part and dissenting in part.** I agree with the

majority that Petitioner Monya Tate's first claim – a challenge to the recall of an alternate juror in

his case – has been procedurally defaulted due his waiver of that claim under Michigan law.

However, because I find that the Michigan Court of Appeals' affirmance of the trial court's

failure to instruct the reconstituted jury to begin deliberations anew, *People v. Tate*, 624 N.W.2d

524, 531-32 (Mich. Ct. App. 2001), "involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1)

(2000), I cannot join the majority's conclusion that Tate's second claim must fail on the merits.

Accordingly, I respectfully dissent.

### I.

As the majority relies on an unduly narrow reading of our authority to review the district

court's denial of Tate's petition for a writ of habeas corpus, I begin my discussion with a

consideration of the appropriate standard of review.

When evaluating a habeas appeal, this Court reviews the district court's legal

conclusions, including its denial of a writ of habeas corpus, *de novo* while evaluating its factual

conclusions for clear error. *Girts v. Yanai*, 501 F.3d 743, 752 (6th Cir. 2007). As revised by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110

Stat. 1214 (Apr. 24, 1996), the federal habeas statute for review of state court judgments, 28

U.S.C. § 2254, provides that:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim . . . resulted in a decision that was contrary to or

> involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1).

In interpreting § 2254, the Supreme Court has clarified that the phrase "clearly established" federal law refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "At the same time, clearly established federal law under the Act encompasses more than just bright-line rules laid down by the Supreme Court. It also clearly includes legal principles and standards enunciated in the Court's decisions." *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002). While the Act "restricts the source of clearly established law to [the Supreme] Court's jurisprudence," *Williams v. Taylor*, 529 U.S. at 412, this Court "may look to lower courts of appeals' decisions, not as binding precedent, but rather to inform the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established by the Supreme Court." *Foley v. Parker*, 488 F.3d 377, 382 (6th Cir. 2007).

A state court decision is *contrary to* clearly established federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. at 405-406. Likewise, a state court decision involves *an unreasonable application* of clearly established federal law if "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id*. at 407. A "state court decision also involves an

unreasonable application of [the Supreme] Court's precedent if the state court either

unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it

should not apply *or unreasonably refuses to extent that principle to a new context where it

should apply*." *Id*. at 408 (emphasis added).

## II.

In the instant case, I would find that the Michigan Court of Appeals unreasonably applied

clearly established federal law when it neglected to find that the Michigan trial court's failure to

direct the reconstituted jury to begin deliberations anew violated Tate's Fourteenth Amendment

right to a jury trial.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall

enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein

the crime shall have been committed." U.S. CONST. amend. VI. In *Duncan v. Louisiana*, the

Supreme Court held that "the Fourteenth Amendment [likewise] guarantees a right of jury trial in

all criminal cases which – were they to be tried in a federal court – would come within the Sixth

Amendment's guarantee." 391 U.S. 145, 149 (1968). In *Williams v. Florida*, the Supreme Court

further expounded upon the Sixth and Fourteenth Amendments' right to jury trial in the process

of holding that the use of a six-person jury, as opposed to a twelve-person jury, did not violate

this fundamental right. 399 U.S. 78, 98-103 (1970). As part of its discussion, the Court

identified the "essential feature" of a jury which may not be infringed upon during a criminal

trial. *See id*. at 100; *see also Miller v. Stagner*, 757 F.2d 988, 995 (9th Cir. 1985) (evaluating the

constitutionality of California's juror substitution procedures in light of whether they "preserve[]

Case No. 06-1773
*Tate v. Bock*

the 'essential feature' of the jury required by the Sixth and Fourteenth Amendments" (quoting

*Williams v. Florida*, 399 U.S. at 100)).  The Court explained this "essential feature" of the jury as

follows:

> The purpose of the jury trial, as we noted in *Duncan*, is to prevent oppression by the Government. "Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." *Duncan v. Louisana*, [391 U.S. at 156]. Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, *and in the community participation and shared responsibility that results from that group's determination of guilt or innocence*. The performance of this role is not a function of the particular number of the body that makes up the jury. To be sure, *the number should probably be large enough to promote group deliberation, free from outside attempts at intimidation*, and to provide a fair possibility for obtaining a representatives cross-section of the community.

*Williams v. Florida*, 391 U.S. at 100 (emphasis added).

The failure to instruct a jury to begin its deliberations anew after an alternate has joined

its ranks is a clear infringement upon this "essential feature" of the jury outlined by the Supreme

Court in *Williams v. Florida*.  As indicated by the Court, a key aspect of this "essential feature"

of the jury is the "*group* deliberation" process.  *Id*. (emphasis added).  In other words, the right to

trial by jury means that the decision about whether to deprive a criminal defendant of his right to

liberty shall result not from the private deliberations of a lone State official, but rather "from [the

jury] *group's* determination of guilt or innocence."  *Id*. (emphasis added).  This collective

determination cannot occur if one of the members of the jury is not included in portions of the

rest of the group's deliberations.  In particular, the replacement of a juror with an alternate after

deliberations have begun and without an instruction for the jury to begin deliberations anew can

hinder group deliberation, and thereby create doubt about whether the verdict is truly that of the entire jury. As Judge Posner has aptly noted:

> An alternate who joins the jury's deliberations after they have begun, even if he has not discussed the case with other people or forgotten the judge's (other) instructions in the interim, will be at a disadvantage in holding his own with the other jurors, and as a result the defendant may not really be getting the jury of 12 to which he is entitled.

*United States v. Josefik*, 753 F.2d 585, 587 (7th Cir. 1985) (Posner, J.); *see also United States v. Lamb*, 529 F.2d 1153, 1156 (9th Cir. 1975) ("The inherent coercive effect upon an alternate juror who joins a jury that has, as in this case, already agreed that the accused is guilty is substantial.").

For this reason, nearly all the federal courts which have considered this issue have found that substitution of an alternate juror in place of a regular juror after deliberations have begun is only constitutional if "the judge instructs the reconstituted jury to begin its deliberations anew and the defendant is not [otherwise] prejudiced by the substitution." *Claudio v. Snyder*, 68 F.3d 1573, 1575 (3d Cir. 1995) (citing cases); *accord Stagner*, 757 F.2d at 995 (finding that the juror substitution procedure employed by a California trial court "preserved the 'essential feature' of the jury" because the judge "instructed the jury to set aside and disregard earlier deliberations and to begin deliberating anew"); *United States v. Hillard*, 701 F.2d 1052, 1056-57 (2d Cir. 1983) (finding that "the 'essential feature' of the jury was preserved" when the "trial judge instructed all the jurors to begin their deliberations anew, explaining that 'a jury verdict must be the product of the deliberations of all twelve people who reach that verdict'"). *See also United States v. Guevara*, 823 F.2d 446, 448 (11th Cir. 1987) (finding no constitutional error with juror

substitution when the trial judge "questioned each of the remaining jurors as to whether they would be able to begin their deliberations anew, . . . ordered that all notes and other materials complied by the jurors during previous deliberations be confiscated, [and] recharged the jury after the new juror had been impaneled"); *Josefik*, 753 F.2d at 587 (finding no constitutional problem with a juror substitution when the alternate juror rejoined the jury only nine minutes into its deliberations, which were "started over, at the trial judge's direction"); *United States v. Phillips*, 664 F.2d 971, 992-93 (5th Cir. 1981) (applying the reasoning of *People v. Collins*, 552 P.2d 742 (Cal. 1976), to find that no federal constitutional violation occurs as a result of juror substitution "where good cause has been shown for the substitution and the jury has been asked to begin its deliberations anew"). Likewise, Rule 24 of the Federal Rules of Criminal Procedure provides that "[i]f an alternate replaces a juror after deliberations have begun, the court *must* instruct the jury to begin its deliberations anew." Fed. R. Crim. P. 24(c)(3) (emphasis added). In reaching these conclusions, our sister circuits and the drafters of Rule 24 have recognized that a trial judge's failure to instruct a jury to begin deliberations anew after an alternate has been added infringes upon the "essential feature" of the right to trial by jury guaranteed in the Sixth and Fourteenth Amendments.

In the instant case, the Michigan Court of Appeals unreasonably applied this clearly established principle of federal law when it approved the Michigan trial court's instruction to the reconstituted jury. Rather than instructing the jury in Tate's case to begin its deliberations anew, the trial judge simply told the jurors:

> Obviously you may have to go back, *and I'm **not** going to say go back to square one*, but certainly you will have to share with the other juror how you have been deliberating, and that juror will then be part of the 12 who will decide the case.

J.A. at 68 (Trial Transcript) (emphasis added). This instruction cannot reasonably be construed as consistent with the trial court's Fourteenth Amendment obligation to ensure that the "essential feature" of Tate's right to jury trial was not infringed. *Williams v. Florida*, 391 U.S. at 100. The instruction did not ensure that the jury would actually begin its deliberations anew, but rather suggested that the jury could merely provide the alternate with a summary of their prior discussions and then continue from the point at which the original jurors had left off before the alternate joined them. As such, the instruction failed "to eliminate any disadvantage that the alternate juror may have felt as a result of her late introduction into the deliberations and [failed] to ensure her full, effective and uncoerced participation in all aspects of the deliberations." *Claudio*, 68 F.3d at 1577. In approving this instruction, the Michigan Court of Appeals ignored not only its federal obligation to preserve the "essential feature" of Tate's right to a jury trial, as required by *Williams v. Florida*, but also its own prior opinion in *People v. Dry Land Marina*, which recognized the "substantial danger" that an "alternate joining a panel which has engaged in deliberations may be coerced and unduly influenced by those jury members who have already formed an opinion." 437 N.W.2d 391, 394 (Mich. Ct. App. 1989).

## III.

For the foregoing reasons, I would find that the jury instruction given in Tate's trial violated his Fourteenth Amendment right to trial by jury. The Michigan Court of Appeals' affirmance of this jury instruction was an unreasonable application of clearly established federal

law.  *See Williams v. Florida*, 391 U.S. at 100.  Accordingly, I would find that Tate is currently

being held in Michigan custody "in violation of the Constitution . . . of the United States," 28

U.S.C. § 2254(a), and is thereby entitled to a writ of habeas corpus.