CLAY, Circuit Judge,
concurring in part and dissenting in part.
I agree with the majority that Petitioner Monya Tate’s first claim — a challenge to the recall of an alternate juror in his case — has been procedurally defaulted due his waiver of that claim under Michigan law. However, because I find that the Michigan Court of Appeals’ affirmance of the trial court’s failure to instruct the reconstituted jury to begin deliberations anew, People v. Tate, 244 Mich.App. 553, 624 N.W.2d 524, 531-32 (2001), “involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” 28 U.S.C. § 2254(d)(1) (2000), I cannot join the majority’s conclusion that Tate’s sec *524 ond claim must fail on the merits. Accordingly, I respectfully dissent.
I.
As the majority relies on an unduly narrow reading of our authority to review the district court’s denial of Tate’s petition for a writ of habeas corpus, I begin my discussion with a consideration of the appropriate standard of review.
When evaluating a habeas appeal, this Court reviews the district court’s legal conclusions, including its denial of a writ of habeas corpus, de novo while evaluating its factual conclusions for clear error. Girts v. Yanai, 501 F.3d 743, 752 (6th Cir.2007). As revised by the Antiterrorism and Effective Death Penalty Act of 1996 (“AED-PA”), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), the federal habeas statute for review of state court judgments, 28 U.S.C. § 2254, provides that:
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ... resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]
28 U.S.C. § 2254(d)(1).
In interpreting § 2254, the Supreme Court has clarified that the phrase “clearly established” federal law refers to “the holdings, as opposed to the dicta, of [the Supreme] Court’s decisions as of the time of the relevant state court decision.” Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). “At the same time, clearly established federal law under the Act encompasses more than just bright-line rules laid down by the Supreme Court. It also clearly includes legal principles and standards enunciated in the Court’s decisions.” Taylor v. Withrow, 288 F.3d 846, 850 (6th Cir.2002). While the Act “restricts the source of clearly established law to [the Supreme] Court’s jurisprudence,” Williams v. Taylor, 529 U.S. at 412, 120 S.Ct. 1495, this Court “may look to lower courts of appeals’ decisions, not as binding precedent, but rather to inform the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established by the Supreme Court.” Foley v. Parker, 488 F.3d 377, 382 (6th Cir.2007).
A state court decision is contrary to clearly established federal law if “the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases” or if “the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court’s] precedent.” Williams v. Taylor, 529 U.S. at 405-406, 120 S.Ct. 1495. Likewise, a state court decision involves an unreasonable application of clearly established federal law if “the state court identifies the correct governing legal rule from [the Supreme] Court’s cases but unreasonably applies it to the facts of the particular state prisoner’s case.” Id. at 407, 120 S.Ct. 1495. A “state court decision also involves an unreasonable application of [the Supreme] Court’s precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extent that principle to a new context where it should apply.” Id. at 408, 120 S.Ct. 1495 (emphasis added).
II.
In the instant case, I would find that the Michigan Court of Appeals unreasonably *525 applied clearly established federal law when it neglected to find that the Michigan trial court’s failure to direct the reconstituted jury to begin deliberations anew violated Tate’s Fourteenth Amendment right to a jury trial.
The Sixth Amendment guarantees that “[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed.” U.S. Const, amend. VI. In Duncan v. Louisiana, the Supreme Court held that “the Fourteenth Amendment [likewise] guarantees a right of jury trial in all criminal cases which — were they to be tried in a federal court — would come within the Sixth Amendment’s guarantee.” 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). In Williams v. Florida, the Supreme Court further expounded upon the Sixth and Fourteenth Amendments’ right to jury trial in the process of holding that the use of a six-person jury, as opposed to a twelve-person jury, did not violate this fundamental right. 399 U.S. 78, 98-103, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). As part of its discussion, the Court identified the “essential feature” of a jury which may not be infringed upon during a criminal trial. See id. at 100, 90 S.Ct. 1893; see also Miller v. Stagner, 757 F.2d 988, 995 (9th Cir.1985) (evaluating the constitutionality of California’s juror substitution procedures in light of whether they “preserven the ‘essential feature’ of the jury required by the Sixth and Fourteenth Amendments” (quoting Williams v. Florida, 399 U.S. at 100, 90 S.Ct. 1893)). The Court explained this “essential feature” of the jury as follows:
The purpose of the jury trial, as we noted in Duncan, is to prevent oppression by the Government. “Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge.” Duncan v. Louisana, [391 U.S. at 156, 88 S.Ct. 1444]. Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group’s determination of guilt or innocence. The performance of this role is not a function of the particular number of the body that makes up the jury. To be sure, the number should probably be large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representatives cross-section of the community.
Williams v. Florida, 399 U.S. at 100, 90 S.Ct. 1893 (emphasis added).
The failure to instruct a jury to begin its deliberations anew after an alternate has joined its ranks is a clear infringement upon this “essential feature” of the jury outlined by the Supreme Court in Williams v. Florida. As indicated by the Court, a key aspect of this “essential feature” of the jury is the “group deliberation” process. Id. (emphasis added). In other words, the right to trial by jury means that the decision about whether to deprive a criminal defendant of his right to liberty shall result not from the private deliberations of a lone State official, but rather “from [the jury] group’s determination of guilt or innocence.” Id. (emphasis added). This collective determination cannot occur if one of the members of the jury is not included in portions of the rest of the group’s deliberations. In particular, the replacement of a juror with an alternate after deliberations have begun and without an instruction for the jury to begin deliberations anew can hinder group deliberation, and thereby create doubt about whether the verdict is truly that of the *526 entire jury. As Judge Posner has aptly noted:
An alternate who joins the jury’s deliberations after they have begun, even if he has not discussed the case with other people or forgotten the judge’s (other) instructions in the interim, will be at a disadvantage in holding his own with the other jurors, and as a result the defendant may not really be getting the jury of 12 to which he is entitled.
United States v. Josefik, 753 F.2d 585, 587 (7th Cir.1985) (Posner, J.); see also United States v. Lamb, 529 F.2d 1153, 1156 (9th Cir.1975) (“The inherent coercive effect upon an alternate juror who joins a jury that has, as in this case, already agreed that the accused is guilty is substantial.”).
For this reason, nearly all the federal courts which have considered this issue have found that substitution of an alternate juror in place of a regular juror after deliberations have begun is only constitutional if “the judge instructs the reconstituted jury to begin its deliberations anew and the defendant is not [otherwise] prejudiced by the substitution.” Claudio v. Snyder, 68 F.3d 1573, 1575 (3d Cir.1995) (citing cases); accord Stagner, 757 F.2d at 995 (finding that the juror substitution procedure employed by a California trial court “preserved the ‘essential feature’ of the jury” because the judge “instructed the jury to set aside and disregard earlier deliberations and to begin deliberating anew”); United States v. Hillard, 701 F.2d 1052, 1056-57 (2d Cir.1983) (finding that “the ‘essential feature’ of the jury was preserved” when the “trial judge instructed all the jurors to begin their deliberations anew, explaining that ‘a jury verdict must be the product of the deliberations of all twelve people who reach that verdict’ ”). See also United States v. Guevara, 823 F.2d 446, 448 (11th Cir.1987) (finding no constitutional error with juror substitution when the trial judge “questioned each of the remaining jurors as to whether they would be able to begin their deliberations anew, ... ordered that all notes and other materials complied by the jurors during previous deliberations be confiscated, [and] recharged the jury after the new juror had been impaneled”); Josefik, 753 F.2d at 587 (finding no constitutional problem with a juror substitution when the alternate juror rejoined the jury only nine minutes into its deliberations, which were “started over, at the trial judge’s direction”); United States v. Phillips, 664 F.2d 971, 992-93 (5th Cir. 1981) (applying the reasoning of People v. Collins, 17 Cal.3d 687, 131 Cal.Rptr. 782, 552 P.2d 742 (1976), to find that no federal constitutional violation occurs as a result of juror substitution “where good cause has been shown for the substitution and the jury has been asked to begin its deliberations anew”). Likewise, Rule 24 of the Federal Rules of Criminal Procedure provides that “[i]f an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew.” Fed.R.CrimP. 24(c)(3) (emphasis added). In reaching these conclusions, our sister circuits and the drafters of Rule 24 have recognized that a trial judge’s failure to instruct a jury to begin deliberations anew after an alternate has been added infringes upon the “essential feature” of the right to trial by jury guaranteed in the Sixth and Fourteenth Amendments.
In the instant case, the Michigan Court of Appeals unreasonably applied this clearly established principle of federal law when it approved the Michigan trial court’s instruction to the reconstituted jury. Rather than instructing the jury in Tate’s case to begin its deliberations anew, the trial judge simply told the jurors:
Obviously you may have to go back, and Pm not going to say go back to square one, but certainly you will have to share with the other juror how you have been deliberating, and that juror will then be part of the 12 who will decide the case.
*527 J.A. at 68 (Trial Transcript) (emphasis added). This instruction cannot reasonably be construed as consistent with the trial court’s Fourteenth Amendment obligation to ensure that the “essential feature” of Tate’s right to jury trial was not infringed. Williams v. Florida, 399 U.S. at 100, 90 S.Ct. 1893. The instruction did not ensure that the jury would actually begin its deliberations anew, but rather suggested that the jury could merely provide the alternate with a summary of their prior discussions and then continue from the point at which the original jurors had left off before the alternate joined them. As such, the instruction failed “to eliminate any disadvantage that the alternate juror may have felt as a result of her late introduction into the deliberations and [failed] to ensure her full, effective and uncoerced participation in all aspects of the deliberations.” Claudio, 68 F.3d at 1577. In approving this instruction, the Michigan Court of Appeals ignored not only its federal obligation to preserve the “essential feature” of Tate’s right to a jury trial, as required by Williams v. Florida, but also its own prior opinion in People v. Dry Land Marina, which recognized the “substantial danger” that an “alternate joining a panel which has engaged in deliberations may be coerced and unduly influenced by those jury members who have already formed an opinion.” 175 Mich.App. 322, 437 N.W.2d 391, 394 (1989).
III.
For the foregoing reasons, I would find that the jury instruction given in Tate’s trial violated his Fourteenth Amendment right to trial by jury. The Michigan Court of Appeals’ affirmance of this jury instruction was an unreasonable application of clearly established federal law. See Williams v. Florida, 399 U.S. at 100, 90 S.Ct. 1893. Accordingly, I would find that Tate is currently being held in Michigan custody “in violation of the Constitution ... of the United States,” 28 U.S.C. § 2254(a), and is thereby entitled to a writ of habeas corpus.